**Shannon BRUMFIELD, Appellant,**

v.

**James STINSON and Carolyn Stinson, Appellees.**

**No. 2011–CA–000837–ME.**

Court of Appeals of Kentucky.

March 30, 2012.

Discretionary Review Denied by Supreme Court June 13, 2012.

Case Ordered Published by Supreme Court June 13, 2012.

Christy Hanley Shircliff, Louisville, KY, for appellant.

Joseph J. Wantland, Shepherdsville, KY, for appellees.

Before DIXON and VANMETER, Judges; LAMBERT,[1] Senior Judge.

DIXON, Judge.

Appellant, Shannon Brumfield, appeals from an order of the Bullitt Family Court designating Appellees, James and Carolyn Stinson, as de facto custodians of Brumfield's minor child, and awarding joint custody to the parties. For the reasons set forth herein, we reverse and remand for further proceedings.

Brumfield and Steven Piercey[2] are the biological parents of G.M.B., born April 6, 2007. Brumfield also has an older child, C.E.S., who lives with the biological father, Jamey Stinson, who also happens to be James and Carolyn's Stinson's son. Shortly after G.M.B.'s birth, the Stinsons offered to help care for him while Brumfield was at work. Initially, the Stinsons would keep G.M.B. at their home while Brumfield worked nights, returning him to Brumfield's apartment when she was home. However, at some point Brumfield also began staying with the Stinsons and, eventually gave up her own apartment and moved into their basement with G.M.B. In late 2008, Brumfield again moved into her own apartment and G.M.B. resumed staying with the Stinsons while she worked.

The parties' arrangement continued until 2010 when a disagreement arose regarding Brumfield's child support obligation. Apparently, Brumfield was substantially in arrears in what she owed to Jamey Stinson for the support of their child. In August 2010, Brumfield requested that Jamey drop the child support case against her. When Jamey refused to do so, Brumfield "cut ties" with the Stinsons, and effectively prevented them from seeing G.M.B.

On October 6, 2010, the Stinsons filed a petition for custody, support and parenting time in the Bullitt Family Court. The court thereafter held hearings on the petition in January and February 2011. Both parties offered significant witnesses and testimony. On April 15, 2011, the family court entered an order finding that the Stinsons qualified as de facto custodians pursuant to KRS 403.270(1), and awarding joint custody to the parties. In addition, the court limited Brumfield's parenting time to alternate weeks from Thursday at 5:00 p.m. until Sunday at 8:00 p.m., and from Tuesday at 5:00 p.m. until Wednesday at 8:00 p.m. during the other weeks. Following the denial of her motion to alter,

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Piercey is incarcerated and not a party to this action.

amend or vacate, Brumfield appealed to this Court.

Brumfield first argues that the family court erred in finding that the Stinsons were de facto custodians under KRS 403.270(1). Further, she contends that since they are not de facto custodians, the Stinsons did not have standing to bring a custody action as there is no evidence that she is unfit or waived her superior right to custody.

KRS 403.270 provides, in pertinent part:

(1) (a) As used in this chapter and KRS 405.020, unless the context requires otherwise, "de facto custodian" means a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age and for a period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department for Community Based Services. Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period.

(b) A person shall not be a de facto custodian until a court determines by clear and convincing evidence that the person meets the definition of de facto custodian established in paragraph (a) of this subsection. Once a court determines that a person meets the definition of de facto custodian, the court shall give the person the same standing in custody matters that is given to each parent under this section and KRS 403.280, 403.340, 403.350, 403.822, and 405.020.

The courts of this Commonwealth have consistently recognized the superior right of natural parents to the care, custody, and control of their children as well as the constitutionally protected right of a parent to raise his or her own child. *See Moore v. Asente*, 110 S.W.3d 336 (Ky. 2003). Before the family court may find that a caregiver has become the "de facto custodian" entitled to be placed on the same footing as a biological parent in a custody proceeding, the court must determine that the biological parent has abdicated the role of primary caregiver and financial supporter of the child for the required period of time. *London v. Collins*, 242 S.W.3d 351 (Ky.App.2007). In other words, "one must literally stand in the place of the natural parent to qualify as a de facto custodian." *Consalvi v. Cawood*, 63 S.W.3d 195, 198 (Ky.App.2001), *abrogated on other grounds by Moore*, 110 S.W.3d 336.

[3] Recently, in *Mullins v. Picklesimer*, 317 S.W.3d 569, 573–574 (Ky.2010), our Supreme Court reiterated:

[W]e note that to qualify as a de facto custodian in Kentucky, one must be "the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three years of age...." KRS 403.270(1)(a). It has been held that parenting the child alongside the natural parent does not meet the de facto custodian standard in KRS 403.270(1)(a). *Consalvi v. Cawood*, 63 S.W.3d 195, 198 (Ky.App.2001), *abrogated on other grounds by Moore v. Asente*, 110 S.W.3d 336 (Ky.2003).

Thus, our law is clear that even if a nonparent provides care and/or financial support for a child, if such is in conjunction with a natural parent, the nonparent will not qualify as a de facto custodian. *Boone v. Ballinger*, 228 S.W.3d 1 (Ky.App.2007).

Although the parties herein dispute the amount of time each spent with G.M.B., there is no question that the Stinsons provided significant care and financial support to him. However, the de facto period could not commence as long as they were "co-parenting" with Brumfield. We are of the opinion that the family court's findings of fact establish that parties had engaged in a kind of "co-parenting" arrangement on and off since G.M.B.'s birth. Although the Stinsons were undoubtedly caregivers, they did not—in the language of *Consalvi*—literally stand in the place of Brumfield, the natural parent. Accordingly, we must conclude that the family court misinterpreted the requirements of KRS 403.270, in finding that there was clear and convincing evidence that the Stinsons were de facto custodians as defined by KRS 403.270 and our case law.

When a non-parent does not meet the statutory standard of de facto custodian in KRS 403.270, the non-parent pursuing custody must prove either of the following two exceptions to a parent's superior right or entitlement to custody: (1) that the parent is shown by clear and convincing evidence to be an unfit custodian, or (2) that the parent has waived his or her superior right to custody by clear and convincing evidence. *Moore*, 110 S.W.3d at 359; *Picklesimer*, 317 S.W.3d at 577. As the family court did not have the opportunity to address the Stinson's custody petition under the above standards, we will not undertake review of such herein.

For the foregoing reasons, the order of the Bullitt Family Court is reversed and this matter is remanded for further proceedings in accordance with this opinion.

ALL CONCUR.